IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**CORNELIUS COBBS,**
        **Petitioner,**

**v.**                                              **Case  No.   5:05cv219/SPM/MD**

**JAMES R. MCDONOUGH,[1]**
        **Respondent.**

_____

**ORDER and**
**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc.  1).  Respondent has filed a response (doc. 11), providing relevant portions of the state court record (doc. 12).  Petitioner was invited to reply (docs. 13, 15-17), but has not done so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

_____

[1]James R. McDonough succeeded James Crosby as Secretary of the Florida Department of Corrections and is automatically substituted as respondent.  *See* Fed. R. Civ. P. 25(d)(1).

## BACKGROUND AND PROCEDURAL HISTORY[2]

**Petitioner was charged by amended information with sexual battery on a child under 12 years of age and lewd or lascivious molestation (ex. A).[3] At trial, Betty Murray testified that the victim, I. L., told her daughter and another friend during a sleep-over in late February or early March of 2002 that petitioner had been molesting her and that her daughter told Ms. Murray, who then asked I. L. about it (ex. B, pp. 55-58). Ms. Murray said of I. L.:**

> **At first, she didn't want to say anything. And then I said it's okay. You can tell me, you know. And she said if she tell, she would, you know, he [Petitioner] was going to do something to her and she was going to get in trouble. And I said, well, you tell me that – what happened. Then I can protect you. And she told me that, yeah, he did it. And she went to crying.**

**(Ex. B, p. 57).**

**I. L., aged 12 and a seventh-grade student at Greensboro High, testified that when her mother was sent to prison in 2000 she went to live with petitioner's family. Petitioner and her mother had been staying together and had produced a child, her half-brother (ex. B, pp. 75-80). The household was run by Barbara Cobbs, petitioner's mother (ex. B. p. 80). When I. L. first moved in she slept in the "front room" at night and petitioner slept "in the far back," but eventually she was sent to sleep in petitioner's room, in a separate bed (ex. B, pp. 81-86). She testified that on several occasions petitioner picked her up, put her on his bed, "started feeling on me," removed her underpants, and tried to insert his penis into her vagina (ex. B, pp. 86-89).**

---

**[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.** Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. Martin v. State of Alabama, 730 F.2d 721,724 (11th Cir. 1984). **Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.**

**[3]All references to exhibits are to those provided at Doc. 12, unless otherwise noted.**

I. L. further testified that she told petitioner she would tell her grandmother about what he had done and that he said he would kill her, and she was afraid of him (ex. B, p. 89).  She said that these incidents happened "about three or four" times (ex. B, pp. 89-90).   Nurse Practitioner Steel testified that she did not physically examine I. L., but that there is rarely physical evidence of sexual abuse in a case of this nature (ex. B, pp. 183-188).

In the defense case in chief, petitioner called his mother, sister, and sister's boyfriend, who testified that petitioner did not sleep at petitioner's mother's residence when the victim lived there (ex. B, pp. 227, 230, 246, 249, 260-261). Petitioner also called his father, Darnell Cobbs, who testified that between 2000 and 2002 petitioner either lived with him in Attapulgus, Ga., where they were working on a construction project, or was living in the Sawdust community in Gadsden County, but was living "in the trailer" and not in the main residence where I. L. was staying (ex. B, pp. 279-284).  When I. L.'s mother was released from prison, however, they did stay at the elder Cobbs' home for about a month while the trailer was being repaired, but always slept in the same room together, while I. L. slept in another room (ex. B, pp. 282-283).

The jury found petitioner guilty as charged. At the sentencing hearing petitioner moved to withdraw his earlier waiver of a presentence investigation report ( PSI) and requested a continuance of sentencing because defense counsel had just received the guardian ad litem report and needed additional time to prepare (ex. C, p. 3, exs. D, E).   Defense counsel stated that petitioner had waived the PSI earlier because he was overwhelmed by the emotional stress of the conviction and wanted to proceed with sentencing right away (ex. C, p. 4).   The trial court denied the request, stating that it was bound by statute to sentence petitioner to life in prison (ex. C, p. 7-8).  The trial court sentenced petitioner to life in prison for the capital sexual battery conviction and twenty-five years in prison for the lewd or lascivious conviction (ex. C, p. 12-13, ex. F).  Petitioner's direct appeal was unsuccessful, as was his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, discussed

below.  He now brings this federal habeas petition, which respondent concedes is timely (doc. 11, pp. 9-10).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

**Federal law, as determined by the Supreme Court of the United States."
Under the "contrary to" clause, a federal habeas court may grant the
writ if the state court arrives at a conclusion opposite to that reached
by this court on a question of law or if the state court decides a case
differently than this Court has on a set of materially indistinguishable
facts.  Under the "unreasonable application" clause, a federal habeas
court may grant the writ if the state court identifies the correct
governing legal principle from this Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case.**

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas

court does not examine the State court's ruling to see if it is correct, but examines

it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63,

123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any

issue raised in a federal habeas petition upon which there has been an adjudication

on the merits in a formal State court proceeding, the federal court should first

ascertain the "clearly established Federal law," namely, "the governing legal

principle or principles set forth by the Supreme Court at the time the state court

render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if

Supreme Court precedent at the time "would have compelled a particular result in

the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is

contrary to the clearly established Supreme Court case law, either because "'the

state court applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases' or because 'the state court confronts a set of facts that are

materially indistinguishable from a decision of th[e] [Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer,*

123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-

20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require

citation to our cases--indeed, it does not even require awareness of our cases, so

long as neither the reasoning nor the result of the state-court decision contradicts

them."   *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002)

(quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either

respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . .");

*Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that

the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner presents this court with two grounds for relief: (1) ineffective assistance of counsel in failing to request a mental health expert to evaluate petitioner's competency, and (2) ineffective assistance of counsel in failing to retain an expert witness.  Respondent  says that both claims are procedurally defaulted and cannot be considered by this court.  Therefore, for each ground for relief, the court will first consider whether the matter was properly exhausted by having been fairly presented to the state courts.  If it was, the court will then fully review the state court's decision as directed by *Williams v. Taylor, supra.*  If it was not, no review is necessary, but the court will conduct a limited review for the sake of completeness. Before proceeding, the court will set out the well-established law concerning exhaustion and ineffective assistance of counsel.

### Exhaustion and Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)   there is an absence of available State corrective process; or

(ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State

alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that

to raise, by any available procedure, the question presented.

properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  *Duncan*, 115 S.Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds,

---

[5]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement.  *See*, *e.g.*, *Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to

federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.*

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

### Ineffective assistance of counsel

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's

performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

1.   <u>Ineffective assistance of counsel - failure to request mental health expert.</u>

Petitioner first contends that his attorney should have moved for the appointment of a mental health expert to evaluate his competency.  He asserts that he "made known to counsel that he had a developmental learning disability it [sic] inhibit his ability to consult with his lawyer with reasonable degree of rational understanding. . . ."  (Doc. 1, p. 4).  He asserts that had counsel made a "pre-trial mental health investigation," she would have discovered that petitioner has a very low IQ, finished school only through the eighth grade, and repeated the same grade four times.  Petitioner says he presented this issue to the state court for review in his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, but the respondent disagrees.  Respondent is correct, as the following background shows.

On the morning of the petitioner's scheduled sentencing his counsel filed a motion for leave to withdraw petitioner's earlier waiver of a PSI (ex. E).  The motion contended that after the verdict the petitioner "was under such emotional distress that he did not make a knowing and intelligent waiver of the PSI and felt under duress to waive the PSI because of his sense that the Judge did not want a PSI." (*Id.*).  Counsel also said she was not prepared for sentencing, had not received a scoresheet, and had just received a report from the guardian ad litem, which she had not had time to review (*id.*).  At the sentencing hearing the court considered the motion.  Counsel argued that:

> [Petitioner] was overwhelmed by the emotional stress of that conviction and felt an urgency of duress, in his mind at least, about the court wanting to proceed with a sentencing right away and just did not have the fortitude within himself at that particular moment to advise me that he wanted a PSI or understood that process.

(Ex. C., p. 4).  The court denied the motion, and sentenced petitioner to life in prison based on its finding that it had no alternative under Florida law but to sentence petitioner to life for sexual battery on a child under twelve (*id.* at 7).  The scoresheet and a PSI were therefore irrelevant.

In his motion for post-conviction relief petitioner claimed ineffective assistance of counsel, and stated his factual basis as follows:

> Counsel's [sic] should have requested a mental health expert to evaluate Mr. Cobbs before or after sentencing to determine his competency at trial or sentencing while charged with capital sexual battery and lewd and lascivious molestation of a child under 12 years of age.   Counsel's express [sic] concern that *the defendant is overwhelmed by the emotional stress of that convictions and felt an urgency of duress in his mind at least.*

(Ex. J, p. 2) (emphasis added). The Rule 3.850 court denied the motion, noting that petitioner was simply quoting from his attorney's argument at sentencing, and that his claim had no basis in fact (ex. J, p. 7).

Clearly, petitioner did not tell the Rule 3.850 court of his developmental disorder, his low IQ, or his lack of schooling as he does here.  There he argued that his attorney should not have allowed him to waive a PSI, based on his being emotionally overwhelmed.  Here he contends that he was mentally disabled to the point that he could not constitutionally be tried for the charged offenses.  Therefore, the issue presented here is completely different from the one presented to the state court.

Habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992).  Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court.  *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").   "Allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to

federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits.' The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the 'serious and meaningful' exhaustion of claims that Congress intended." *Footman*, 978 F.2d at 1211. "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Secretary*, 377 F.3d 1317, 1344 (11th Cir. 2004).

That is precisely why petitioner's claim is unexhausted. He told the state court that his counsel should have requested a mental health expert because he was emotionally overwhelmed by the verdict and was incapable of intelligently waiving his right (which he did not have) to a PSI. Here he says something altogether different: that his lawyer should have conducted a pre-trial investigation of his mental health, and hired a mental health expert to determine his competence to stand trial based on his inability to assist in the defense of his case. Petitioner failed to fairly present this claim to the state court. Any present attempt to return to state court to do so would be procedurally barred, so his claim is procedurally defaulted. Petitioner has not shown cause or prejudice to overcome his default,[6] and he has not presented the kind of new reliable evidence of innocence not presented at trial that would justify making a miscarriage of justice exception, as in *Schlup, supra*.[7]

---

[6]The only explanation petitioner offers for not presenting this claim to the state court is his low intelligence and lack of assistance of an inmate law clerk. Courts have been reluctant to recognize such as cause absent a conclusive showing of incompetence. *See Stanley v. Lockhart*, 941 F.2d 707, 709-10 (8th Cir. 1991) (cause must be external to the petitioner; *pro se* status, limited educational background and mental incompetence not sufficient cause to excuse procedural default); *Williams v. Arkansas*, 941 F. 2d 672, 674 (8th Cir. 1991); *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990); *Smith v. Newsome*, 876 F.2d 1461, 1465 (11th Cir. 1989) (illiteracy does not constitute cause; failure to "act or think like a lawyer cannot be cause for failing to assert a claim").

[7]The Supreme Court recently gave a specific example of the kind of new evidence necessary to excuse a procedural default. See *House v. Bell*, __ U.S. __, __ S.Ct. __ 2006 WL 1584475 (June 12, 2006) (holding that there was sufficient evidence to allow the exception where there was new DNA evidence that contradicted the state's case; there was scientific evidence that the bloodstains upon which the state relied were the result of faulty evidence handling by law enforcement; there were new independent witnesses who credibly pointed to the likelihood that the murder was committed by

This court is therefore prohibited from reaching the merits of this ineffective assistance claim.

If the court were to review it, the claim is without merit. In order for a criminal defendant to be required to stand trial, he must have the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). However, in the context of an ineffective assistance claim where the petitioner faults trial counsel for failing to investigate or act on petitioner's alleged incompetence, petitioner is required to do more than make the claim that he was incompetent - he must allege facts suggesting either that counsel was aware of signs indicating he was incompetent to stand trial and unreasonably failed to act on them, or that counsel unreasonably failed to make investigation into his competence. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066 ("[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."); *see also Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000); *Holsomback v. White*, 133 f.3d 1382, 1387 (11th Cir. 1998).

Even assuming *arguendo* that counsel was aware of petitioner's learning disability, low IQ and minimal education, these factors alone would not have provided a basis for counsel to question petitioner's competence to stand trial. Factors relevant to assessing competency are (1) defendant's irrational behavior and past medical history; (2) defendant's behavior and demeanor during trial; and (3) the opinion of psychiatric experts as to competency. *See generally, Drope v. Missouri*, 420 U.S. 162, 180 (1975); *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) ("Although there are no fixed or immutable signs which unvariably indicate the need to further inquire to determine fitness to proceed, evidence of a defendant's

___

someone else; and there was other evidence tending to negate the state's evidence).

irrational behavior [and] his demeanor at trial . . . are all relevant." (internal quotation marks omitted); *Thomas v. Kemp*, 796 F.2d 1322, 1326 (11th Cir. 1986).  The Eleventh Circuit has stated that "[n]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  *Medina*, 59 F.3d at 1107 (quotations and citations omitted).   It was not objectively unreasonable for counsel to decline to investigate the issue of petitioner's competency when he showed no signs of mental incompetence.  Furthermore, even if counsel had investigated petitioner's "mental health," according to petitioner all she would have discovered was his low intelligence and limited education, not signs of mental incompetence to stand trial.  This forecloses petitioner's ability to show prejudice.  Petitioner has not shown that had counsel conducted an investigation of his mental health, there is a reasonable probability she would have discovered signs indicating the need for further investigation as to petitioner's fitness to proceed.

Moreover, petitioner's present protestations of mental incompetence are unsupported and unpersuasive.[8]  "This court will not 'blindly accept speculative and inconcrete claims' as the basis upon which a hearing will be ordered . . . ."  *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir.

---

[8]Petitioner adds that his motion for post-conviction relief "is living testimony of his mental competency to discuss or disclose pertinent facts surrounding the alleged offense."  (Doc. 1, p.8).  This assertion, too, falls far short of suggesting that petitioner was mentally incompetent to stand trial.  Petitioner's Rule 3.850 motion is not significantly different in its content and reasoning from the many hundreds of *pro se* motions and petitions seen by this court, and it certainly does not show a level of mental disability that would render petitioner unable to consult with his lawyer and understand the charges against him.

1971).[9]  Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.  *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).  Petitioner has not shown that counsel was objectively unreasonable in failing to investigate or pursue the issue of petitioner's competence to stand trial.  Petitioner is not entitled to federal habeas relief on this ground, and the writ should not issue.

   2.  <u>Ineffective assistance of counsel - failure to request expert to examine victim.</u>

   Petitioner next contends:

   Counsel was ineffective for failing [to] depose or call alibi witness i.e. expert witness.  The expert witness a nurse or assistant to physician who possessed experience with dealing with sexual assault victims could have testified whether victim womb demonstrate numerous sexual episode abuse or gave expert opinion of great insight.

(Doc. 1, p.4).  In essence, and broadly interpreted, petitioner says that his attorney should have retained an expert to testify concerning physical signs of sexual abuse in the victim.  The respondent contends that this issue was not presented to the state court, because the issue framed in the motion for post-conviction relief read as follows:

   Counsel failure to have the victim I. L. examined by defense experts, or to object to the testimony of Ms. Lynn Steel opinion.  Counsel should have requested a defense expert to challenge the response of the state's expert witness M. Lynn Steel opinion concerning the child vaginal sexual organs or penetration intercourse.

(Ex. J, p. 3).  Respondent says that in the instant federal habeas petition petitioner "argues that his attorney was ineffective for failing to seek a medical expert to examine the victim," while in his motion for post-conviction relief he raised a claim that counsel was ineffective "for failing to have a mental health expert evaluate appellant [sic]." (Doc. 11, p. 23).  Respondent then says that here "petitioner alleges that an examination would have revealed that there was no trauma to indicate sexual assault, which he did not allege in his state claim." (Doc. 11, p. 24).  The court sees

---

[9]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

no reference to a mental health expert in this part of petitioner's claim, either here or in the state proceeding.  And while an attorney could have done a better job of framing and arguing the issue, there is no question in the court's mind that the same issue raised here was presented to the state court.  In both instances petitioner says that counsel should have retained an expert on sexual abuse.   Therefore, respondent's assertion that the claim is procedurally defaulted on this basis lacks merit.

Respondent further argues, however, that the claim is unexhausted for another reason - that the state court summarily denied it as facially insufficient and did not review it on the merits.  Here respondent is correct.  To assert a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the defendant must (1) identify the prospective witness, (2) describe the substance of the witness's testimony, (3) state that the witness was available to testify, and (4) describe the prejudice resulting from omitting the witness's testimony.  *See Nelson v. State*, 875 So.2d 579, 582-83 (Fla. 2004).  At trial the state presented Lynn Steel, ARNP (Advanced Registered Nurse Practitioner), who was qualified as an expert in sexual abuse investigations.  She did not examine the victim, but testified generally that because of the elasticity of the vagina, actual penile penetration of a child under 12 most frequently causes no damage, which results in a normal physical examination and no positive finding of sexual abuse (ex. J, pp. 182-190).  The Rule 3.850 court held that in arguing his position on this ground petitioner had made nothing more than conclusory allegations, and had failed to demonstrate the existence of a defense expert, or the substance of that expert's testimony (ex. J, p. 8).  The court also held that counsel did in fact object to the state's expert's testimony (*id.*) (referring to trial transcript).[10]

---

[10] The precise wording of the Rule 3.850 court's ruling disposition of this claim is as follows:

Defendant in ground two of his motion claims counsel was ineffective in not having the victim examined by a defense expert or objecting to the testimony of the State's expert witness.  Defendant in making his conclusory allegations has failed to demonstrate or even allege the existence of a defense expert or the substance of the

Because petitioner cannot return to the state court to properly present his claim, the ground is procedurally barred and cannot be considered by this court unless petitioner can show cause and prejudice, or a miscarriage of justice.  He has made none of these showings to excuse his default.

If this court were to review petitioner's claim concerning counsel's failure to retain an expert, the result would be the same.  Petitioner has presented this court with no evidence concerning who such an expert might be or what the expert might say.  He merely speculates that a defense expert would somehow have helped.  "This court will not 'blindly accept speculative and inconcrete claims' as the basis upon which a hearing will be ordered . . . ."  *Raulerson v. Wainwright*, *supra*.

Moreover, as respondent points out, trial counsel could not have compelled the victim to submit to a physical examination.  In Florida, "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of an individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."  *State v. Smith*, 260 So.2d 489, 491 (Fla. 1972).  "The common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law."  *Id.*  Furthermore, "[n]othing contained in these rules [Florida Rules of Criminal Procedure] purports to authorize a trial court to grant a motion compelling witnesses to submit to a physical examination of any sort."  *Id.*  In this case, petitioner has not alleged that there was a compelling need for a physical examination, and lack of corroboration is insufficient.  *Camejo v. State*, 660 So.2d 242, 243 (Fla. 1995) ("Section 794.022 specifically provides that testimony of a sexual abuse victim need not be corroborated; therefore, this would be an invalid reason to order such an examination in Florida.").  Thus, any motion

---

testimony that would have been offered.  Further, in alleging that counsel was ineffective in failing to object to the testimony of the State's expert, Defendant chooses to ignore that his counsel did, in fact, object to the testimony of the State's expert, Lynn Steel.

(Ex. J, p. 8) (citations to exhibits omitted).

defense counsel would have filed to request an examination of the victim would have been denied. *See, e.g., State v. Brewster*, 601 So.2d 1289, 1291 (Fla. 5th Dist. Ct. Ap. 1992) ("In the absence of any statutory or rule authority for compelling the victim to submit to any type of test or examination, and the lack of any evidence whatsoever to support a compelling need for such an intrusion, the victim's right to privacy from any governmental intrusion far outweighs the respondent's conclusory claim of need for the information sought."); *Bartlett v. Hamwi*, 626 so.2d 1040, 1043 (Fla. 4th Dist. Ct. App. 1993) ("This court has . . . quashed orders requiring physical examinations of victims of sex crimes on each occasion when confronted with the issue, placing a heavy burden on the defendant to show that extreme and compelling circumstances exist, and that a manifest injustice, resulting in denial of due process, would occur unless the testing is compelled.").

Finally, as to petitioner's claim that his counsel did not object to Ms. Steel's testimony, as the Rule 3.850 court held, counsel did in fact object and moved to strike Ms. Steel's testimony on the ground that she had not examined the victim. The trial court overruled the objection (ex. B, pp. 187-88).

Petitioner has show neither deficient performance nor prejudice under *Strickland*. Thus, he is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that James R. McDonough has been substituted as respondent in this cause.

**And it is respectfully RECOMMENDED:**

**That the § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Cornelius Cobbs* in the Circuit Court of Gadsden County, Florida, case no. 02-00248, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.**

**At Pensacola, Florida, this 26th day of June, 2006.**


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**